IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KIMBERLY D. CORONA,<br><br>                    Plaintiff,<br><br>       vs.<br><br>ANGELA FOLTZ-ORBAL,<br><br>                    Defendant. | **4:24CV3024**<br><br><br>**MEMORANDUM AND ORDER** |

Plaintiff Kimberly D. Corona filed a Complaint on February 1, 2024.  Filing No. 1. She has been given leave to proceed in forma pauperis.  Filing No. 7.  The Court now conducts an initial review of Plaintiff's Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e) and 1915A.  For purposes of this initial review, the Court considers the supplemental materials filed by Plaintiff, Filing No. 8; Filing No. 10; Filing No. 12; Filing No. 13; Filing No. 14; Filing No. 15, as part of the Complaint.  *See* NECivR 15.1(b).

## I.  SUMMARY OF COMPLAINT

Plaintiff is an inmate in the custody of the Nebraska Department of Correctional Services ("NDCS") and currently confined in the Nebraska Correctional Center for Women ("NCCW") in York, Nebraska.  Plaintiff sues "Angela Foltz-Orbal," who is not identified in the Complaint.  However, the Court takes judicial notice that Angela Folts-Oberle ("Folts-Oberle") is the warden of the NCCW[1] and will assume that Folts-Oberle is the defendant Plaintiff intends.

---

[1] *See* https://corrections.nebraska.gov/facilities/nebraska-correctional-center-women (last visited July 25, 2024).

Plaintiff has been in and out of the NCCW since 2014 and has currently been in custody since August 2021. Over the ten years that Plaintiff has been in the NCCW, she claims the facility's water has caused her health issues. Plaintiff alleges, "I am bringing this [suit] to federal court due to malpractice health issues with contaminated water. I am having issues using the restroom, heavy bloody stools, constipation, hair loss, migraines, stomach ulcers, and I'm concerned about health issues in the future because H. Pylori causes cancer." Filing No. 1 at 1 (spelling and punctuation corrected). Plaintiff further alleges she contracted a "staff [sic] infection due to the water" and that her spouse also has health issues from her time in the NCCW between April and May 2022. *Id*. at 2. Plaintiff seeks $1.2 million in damages due to the lack of clean water and because the NCCW "declines to get a new water pipe for clean water." *Id*. at 1–2.

Plaintiff submitted copies of several Inmate Interview Requests or "kites" she sent to medical complaining of abdominal pain and blood in her stool, though Plaintiff states in one kite that she tested "negative for H. Pylori." Filing No. 14 at 2; *see also* Filing No. 1 at 4–5; Filing No. 14 at 1. Plaintiff also submitted newspaper articles discussing NCCW inmates' concerns over the water quality, 2017 and 2018 reports indicating the facility's pipes were a source of higher concentrations of copper than allowed by federal regulations, and the Nebraska Legislature's March 2024 approval of $2.5 million in funds for water system repairs at the NCCW. Filing No. 13. In addition, Plaintiff submitted a "Consumer Notice of Lead and Copper Tap Water Results" dated May 17, 2023, which indicates tests of lead and copper levels at the NCCW medical facility were below the concentration levels at which treatment of a water system would be needed to correct a problem. Filing No. 15 at 2.

The attachments and supplements to Plaintiff's Complaint further show that the NCCW was without drinkable water between January 24 and January 27, 2024, and Plaintiff was unable to shower for two days. Filing No. 1 at 3; Filing No. 8 at 5. Also, there was no hot water in some of the facility's buildings between April 2 and April 8, 2024, which Plaintiff alleges violated her "transgender or gender fluid rights" because a temporary alternate shower schedule was instituted even though Plaintiff is "on a 'transgender[,] gender fluid' shower time [and is] supposed to shower by [her]self and not with general population [unless she] choose[s] to" do so. Filing No. 12 at 1.

In her supplemental filings, Plaintiff also asserts other complaints regarding her conditions of confinement. First, Plaintiff states she has been having a hard cough for 90 days "from breathing in the molded air that's not ventilated in our shower" and "she is now . . . coughing up black fluid" even though she has never smoked or used drugs. Filing No. 8 at 1–2 (spelling corrected). On April 4, 2024, Plaintiff alleges "there was [sic] feces coming out of the kitchen[']s drains." Filing No. 12 at 2. Plaintiff also states she was diagnosed with HPV[2] and is supposed to be "checked every 6 months and it[']s been 2 ½ years." Id. Lastly, in a supplement dated April 28, 2024, Plaintiff alleges she "grieved the warden and unit case manager Steve H." about an unspecified subject over two weeks ago and has not received her grievances back, though the "time frame for [her] to get them [has] passed," and she is concerned that her grievances were misplaced or thrown out. Filing No. 13 at 1.

---

[2] The Court understands "HPV" to mean human papillomavirus.

## II.  APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate.  *See* 28 U.S.C. §§ 1915(e) and 1915A.  The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'"  *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)).  However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties."  *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

### III.  DISCUSSION

Liberally construed, Plaintiff here alleges federal constitutional claims.  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).  For the reasons that follow, Plaintiff's Complaint fails to state a claim for relief against Defendant Folts-Oberle, but Plaintiff will be given leave to amend her Complaint to allege plausible claims for relief against Folts-Oberle or other proper defendants.

### A.  Sovereign Immunity

As stated above, the Court assumes Plaintiff intends to sue Folts-Oberle, the warden of the NCCW, for damages.  However, Plaintiff did not specify the capacity in which Folts-Oberle is sued.  Where a plaintiff fails to "expressly and unambiguously" state that a public official is sued in his or her individual capacity, the court "assume[s] that the defendant is sued only in his or her official capacity." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999).  The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and an employee of a state sued in the employee's official capacity.  *See, e.g.*, *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446–47 (8th Cir. 1995).  Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress.  *See, e.g.*, *Dover Elevator Co.*, 64 F.3d at 447; *Nevels v. Hanlon*, 656 F.2d 372, 377–78 (8th Cir. 1981).  There is

nothing in the record before the Court showing that the State of Nebraska waived, or that Congress overrode, sovereign immunity in this matter. Thus, the Eleventh Amendment bars Plaintiff's claims for damages against Folts-Oberle in her official capacity.

Sovereign immunity does not bar claims for damages brought pursuant to 42 U.S.C. §1983 against state officials acting in their personal or individual capacities. However, even if Plaintiff had sued Folts-Oberle in her individual capacity, the Complaint fails to state a plausible claim for relief against Folts-Oberle as Plaintiff did not allege any facts regarding Folts-Oberle's involvement in the alleged constitutional violations.

"To prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation." *Kingsley v. Lawrence Cty.*, 964 F.3d 690, 700 (8th Cir. 2020) (quoting *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017)). A plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution. *Iqbal*, 556 U.S. 662, 676 (2009). Moreover, "[i]t is well settled that § 1983 does not impose respondeat superior liability." *Hughes v. Stottlemyre*, 454 F.3d 791, 798 (8th Cir. 2006) (internal quotation marks omitted). Put another way, Folts-Oberle cannot be held liable for the alleged violations of Plaintiff's constitutional rights based solely on her position as the NCCW warden. *See Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012) (prison supervisors cannot be held liable under § 1983 based on respondeat superior theory). "Supervisors can, however, 'incur liability . . . for their personal involvement in a constitutional violation, or when their corrective inaction amounts to deliberate indifference to or tacit authorization of violative practices.'" *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) (quoting *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993)).

6

Here, Plaintiff has alleged no facts with respect to Folts-Oberle's involvement in any of the alleged constitutional violations nor has Plaintiff alleged that Folts-Oberle failed to take corrective action or tacitly authorized any violative practices. Accordingly, Plaintiff has failed to state a claim for relief against Folts-Oberle.

Though Plaintiff's Complaint fails to state a claim against the only named defendant, the Court will examine Plaintiff's constitutional claims to determine whether Plaintiff should be given an opportunity to amend her Complaint to allege plausible claims for relief against Folts-Oberle or other proper defendants in their individual capacities.

## B. Conditions of Confinement Claims

Liberally construed, Plaintiff alleges the NCCW's contaminated drinking water, lack of showers, and other unsanitary prison conditions violate her rights under the Eighth Amendment. The Eighth Amendment's prohibition against "cruel and unusual punishments" requires that prison officials provide humane conditions of confinement. "Prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). The Constitution "does not mandate comfortable prisons" or that prisons be "free of discomfort." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). In general, "[t]o establish a conditions of confinement claim, a plaintiff must demonstrate (1) that the alleged deprivation was 'objectively, sufficiently serious' to result in the 'denial of the minimal civilized measure of life's necessities,' and (2) that the prison official whose action or omission caused the deprivation behaved with 'deliberate indifference to inmate health or safety.'" *Hamner v. Burls*, 937 F.3d 1171, 1178 (8th Cir. 2019) (quoting *Farmer*,

511 U.S. at 834). "Deliberate indifference requires 'more than mere negligence,' but does not require acting 'for the very purpose of causing harm or with knowledge that harm will result.'" *Brown v. Fortner*, 518 F.3d 552, 558 (8th Cir. 2008) (quoting *Farmer*, 511 U.S. at 835). The Supreme Court has stated that "acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Farmer*, 511 U.S. at 836. The Court examines each of Plaintiff's conditions-of-confinement claims in turn.

   *1. Lack of Clean Drinking Water*

   Plaintiff alleges the NCCW's drinking water is contaminated and she has experienced health issues from drinking the water. "Access to a sufficient quality and quantity of water for drinking and basic personal hygiene is, of course, a minimal life necessity." *Gray v. Cash*, No. 617CV06020SOHMEF, 2017 WL 2304031, at *2 (W.D. Ark. Apr. 12, 2017), *report and recommendation adopted*, No. 6:17-CV-06020, 2017 WL 2304018 (W.D. Ark. May 25, 2017) (citing *Scott v. Carpenter*, 24 Fed. Appx. 645, 647 (8th Cir. 2001) (unpublished) (no disagreement that basic personal hygiene falls within the minimal civilized measure of life's necessities); *Spires v. Paul*, 581 Fed. Appx. 786, 792-94 (11th Cir. 2014) (housing an inmate in a cell without potable water for several days and forcing him to drink from the toilet to survive stated an Eighth Amendment violation)).

   Liberally construed, Plaintiff has alleged an objectively, sufficiently serious deprivation of a minimal life necessity as she alleges she has experienced specific health issues from the NCCW drinking water. However, Plaintiff's Complaint and supplemental filings fail to allege sufficient facts suggesting that Folts-Oberle or any other NCCW official was deliberately indifferent to Plaintiff's health or safety. On the contrary, the

8

supplemental materials submitted by Plaintiff indicate NDCS officials implemented chemical treatments of the water at the NCCW in approximately July 2021 resulting in decreased copper levels, recent testing results indicate lead and copper levels at the NCCW medical facility were below the concentration levels at which treatment of a water system would be needed to correct a problem, and the NDCS recently received state funds for water system repairs at the NCCW. Filing No. 13 at 2–7; Filing No. 15 at 2. Moreover, Plaintiff does not complain that she did not receive appropriate treatment in response to her kites to the NCCW medical staff regarding her health concerns. In short, Plaintiff does not allege any facts suggesting Folts-Oberle or other NCCW officials are aware of Plaintiff's health concerns regarding the drinking water quality and are ignoring those concerns, taking no action to address her concerns, or are otherwise deliberately indifferent to Plaintiff's health or safety. *See Doering v. Kelley*, No. 2:19-CV-00045-JM-JJV, 2020 WL 6073252, at *2 (E.D. Ark. Sept. 25, 2020), *report and recommendation adopted*, No. 2:19-CV-00045-JM-JJV, 2020 WL 6064791 (E.D. Ark. Oct. 14, 2020) (no evidence prison officials were subjectively aware of and deliberately indifferent to any risk of harm where officials routinely had their drinking water tested by health department); *Fitzgerald v. Nebraska Dep't of Corr. Servs.*, No. 8:16CV101, 2016 WL 4443903, at *3 (D. Neb. Aug. 22, 2016) (prisoner's complaint failed to allege prison officials were deliberately indifferent to prisoner's health or safety where the complaint's allegations "reveal that Defendants were more than responsive to the multiple grievances filed by Plaintiff and that Defendants sought to remedy or address the purported unsatisfactory conditions"); *cf*. *Walker v. Hickenlooper*, 627 F. App'x 710, 714 (10th Cir. 2015) (finding plaintiff alleged plausible deliberate indifference claims against wardens who received notice that water

9

supply contaminated but assured inmates that tap water safe to drink).  On the Court's own motion, Plaintiff will be given leave to file an amended complaint to allege a plausible Eighth Amendment claim against Folts-Oberle or other individual NCCW defendants regarding the contaminated drinking water.

Liberally construed, Plaintiff also may be alleging a conditions-of-confinement claim based on the NCCW's complete lack of drinkable water between January 24 and January 27, 2024.  The materials provided by Plaintiff show that the NCCW notified inmates on January 24, 2024, that "[a] water main repair has occurred which resulted in pressure loss in the system," the facility resolved the issue, and the drinking water supplied to the inmates was being sampled "to ensure that no bacteriological contamination has occurred."  Filing No. 1 at 3.  The NCCW further informed inmates that their water was "safe for bathing and hand washing" and "[a]lternate bottled water will be provided."  Id.  On January 27, 2024, the NCCW informed inmates that the "drinking water problem [was] corrected."  Filing No. 8 at 5 (capitalization omitted).  This brief 3-day period in which Plaintiff could not access drinking water through the NCCW's plumbing system but was provided with alternate drinking water does not rise to the level of a constitutional violation.  See Smith v. Copeland, 892 F. Supp. 1218, 1230 (E.D. Mo. 1995) (turning off water in a cell except for brief periods to flush the toilet, and providing drinking water with each meal did "not deprive plaintiff of minimally necessary drinking water or hygienic requirements") aff'd, 87 F.3d 265 (8th Cir. 1996).  Accordingly, Plaintiff's claim regarding the lack of drinking water between January 24 and January 27, 2024, will be dismissed.

2. *Lack of Showers*

Plaintiff claims her "transgender or gender fluid rights" were violated when a temporary alternate shower schedule was instituted between April 2 and April 8, 2024, due to the lack of hot water in some of the NCCW's buildings. Filing No. 12 at 1. Plaintiff states she normally is supposed to shower alone "and not with general population [unless she] choose[s] to" do so. *Id*. Plaintiff also alleged she was unable to shower for two days in January 2024. Filing No. 1 at 3. Even assuming Plaintiff was not permitted to shower for two days in January and six days in April, Plaintiff's allegations are insufficient to state an Eighth Amendment violation. "[A] two-week suspension of shower privileges does not suffice as a denial of basic hygienic needs." McCoy v. Goord, 255 F. Supp. 2d 233, 260 (S.D.N.Y. 2003) (internal quotation marks and quotation omitted); *see also* Jones v. Houston, No. 4:06CV3314, 2007 WL 3275125, at *8 (D. Neb. Nov. 2, 2007) (no Eighth Amendment claim raised even if court assumed prisoner not permitted to shower during thirteen-day lockdown). Thus, Plaintiff fails to state a plausible claim for relief based on her temporary lack of shower access, and such claim will be dismissed.

3. *Exposure to Mold and Feces*

Plaintiff also claims she suffered from a hard cough for 90 days and was coughing up "black fluid" due to exposure to mold in the shower which is not properly ventilated. Filing No. 8 at 1–2. Liberally construed, Plaintiff's allegation states a sufficiently serious deprivation of a minimal life necessity. *Cf*. Horner v. Bowers, No. 4:19CV00690-LPR-JTR, 2020 WL 4745076, at *4 (E.D. Ark. June 12, 2020), *report and recommendation adopted*, No. 4:19-CV-00690-LPR, 2020 WL 4742378 (E.D. Ark. Aug. 14, 2020) (pretrial detainee's "three-month exposure to leaky plumbing, unsanitary water faucets, black

fungus and mold, inadequate cleaning of mattresses, and sharing of nail clippers and razors, *with no accompanying physical injury*, fails to state a viable inhumane conditions of confinement claim." (emphasis added)).  Once again, however, Plaintiff has not alleged any facts to suggest Folts-Oberle or any other NCCW official was deliberately indifferent to Plaintiff's health and safety.  Plaintiff attached a kite to one of her supplements showing she reported the cough and her belief it was due to "mold from the showers" which Plaintiff uses "every day [for] about 30-40 min[utes]" to NCCW on February 12, 2024, and was scheduled to be seen by the medical provider.  Filing No. 8 at 3.  Plaintiff further indicates she was given an injection for the cough.  Filing No. 10 at 2.  Plaintiff does not allege that she informed Folts-Oberle of her concerns regarding mold in the showers or whether any NCCW staff failed to take any corrective action in light of her kite regarding mold in the showers.   As pleaded, Plaintiff's Complaint fails to state a viable conditions-of-confinement claim against Folts-Oberle or any other NCCW official.  Plaintiff, however, will be given leave to amend her Complaint to allege sufficient facts in support of her mold-exposure claim.

Read liberally, Plaintiff also alleges she was exposed to feces that came out of the kitchen drains on April 4, 2024.  Filing No. 12 at 2.  Plaintiff's vague, conclusory allegation, however, is insufficient to state a violation of the Eighth Amendment as she does not allege that her exposure to the feces from the clogged or backed-up drain created an excessive risk to her health or safety.  *See Markcum v. Tallant*, No. 4:19-CV-04106, 2019 WL 4396144, at *3 (W.D. Ark. Sept. 13, 2019) (plaintiff's allegation that he stood in ankle deep water for several hours after prison unit flooded failed to state conditions-of-confinement claim where plaintiff did not claim his exposure to the water created an

excessive risk to his health or safety) (citing *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (holding that an inch or two of standing water in the shower does not constitute an excessive risk of harm, such as contracting a communicable disease, even when inmate had wound on foot)).  "Moreover, even exposure to raw sewage does not automatically constitute an Eighth Amendment violation." *Id.* (citing *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996) (finding a toilet overflow which lasted four days did not amount to a constitutional violation)).  Thus, Plaintiff fails to state a claim for relief regarding her one-time exposure to feces from the kitchen drains, and the Court concludes that such claim should be dismissed.

## C.  Lack of Grievance Responses

Plaintiff next alleges Folts-Oberle and unit case manager Steve H. failed to return her grievances within the established time frame, and Plaintiff believes her grievances may have been misplaced or discarded.  Filing No. 13 at 1.  Read liberally, Plaintiff may be asserting a due process claim.  "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  Thus, Plaintiff must demonstrate that she has been deprived of a liberty interest in order to successfully claim that her Fourteenth Amendment right to due process has been violated.  *Persechini v. Callaway*, 651 F.3d 802, 806 (8th Cir. 2011) (citing *Sandin v. Conner*, 515 U.S. 472 (1995)).  A liberty interest can arise out of the Due Process Clause itself or be state-created.  *Id.* (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

13

Here, Plaintiff's allegations regarding the mishandling of and lack of responses to her inmate grievances fail to state a claim for relief under § 1983. *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (holding that inmates have no "liberty interest" in the processing of their grievances, such as would support § 1983 claim for prison officials' failure to pick up inmate's completed grievance forms or investigate inmate's grievances). Indeed, even the lack of a meaningful grievance procedure does not provide a cause of action under § 1983. *See Merryfield v. Jordan*, 431 Fed. App'x 743, 750 (10th Cir. 2011) (holding that civilly committed sex offender lacked any federal constitutional right to an adequate grievance procedure). Thus, even if Plaintiff had alleged her due process claims against Folts-Oberle or unit case manager Steve H. in their individual capacities, the facts alleged in the Complaint are insufficient to state any due process violation. Plaintiff's due process claims regarding her grievances will, therefore, be dismissed.

### D. Deliberate Indifference to Serious Medical Needs

Liberally construed, Plaintiff alleges a claim of deliberate indifference to her serious medical needs in violation of the Eighth Amendment because of the more than two year delay in being "checked" regarding her HPV diagnosis. Filing No. 12 at 2. To establish an Eighth Amendment violation, a prisoner must demonstrate an objectively serious medical need that the defendant knew about and deliberately disregarded. *Morris v. Cradduck*, 954 F.3d 1055, 1058 (8th Cir. 2020), *reh'g denied* (May 12, 2020) (citing *Barton v. Taber*, 908 F.3d 1119, 1124 (8th Cir. 2018)). Ascertaining "[w]hether an official was deliberately indifferent requires both an objective and a subjective analysis." *Ryan v. Armstrong*, 850 F.3d 419, 425 (8th Cir. 2017) (quoting *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014)).

14

"The objective component of a claim for deliberate indifference to serious medical needs is satisfied if the medical need in question 'is supported by medical evidence, such as a physician's diagnosis, or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Bailey v. Feltmann*, 810 F.3d 589, 594 (8th Cir. 2016) (internal quotation omitted)).  Establishing the subjective component of a deliberate indifference claim requires "more than negligence, more even than gross negligence, but less than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate."  *Thompson v. King*, 730 F.3d 742, 747 (8th Cir. 2013) (internal citations and quotation marks omitted).  Thus, to be liable for deliberate indifference, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Here, Plaintiff alleges no facts regarding what "checks" she should be provided regarding her HPV diagnosis, how the delay in providing such checks presents a serious risk of harm to Plaintiff, or what harm, if any, resulted from the delay in providing the checks.  Rather, Plaintiff's kites suggest the NCCW medical staff schedules Plaintiff to be seen by medical when she requests, and there is no indication that Plaintiff has requested any "check" or treatment related to her HPV and been denied.  *See* Filing No. 1 at 4–5; Filing No. 14.  Thus, as pleaded, Plaintiff's Complaint fails to allege facts stating a viable claim of deliberate indifference to her medical needs, but the Court will give Plaintiff leave to amend her Complaint to allege sufficient facts in support of this claim.

## IV.  OTHER PENDING MOTIONS

### A.  Motion for Appointment of Counsel

Plaintiff filed a request for the appointment of counsel on February 23, 2024.  Filing No. 9.  "There is no constitutional or statutory right to appointed counsel in civil cases." *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).  A district court "may request an attorney to represent" an indigent civil litigant, 28 U.S.C. § 1915(e)(1), but it has a "good deal of discretion" in deciding whether to do so, *Chambers v. Pennycook*, 641 F.3d 898, 909 (8th Cir. 2011).  "Relevant criteria for determining whether counsel should be requested include the factual and legal complexity of the case, the plaintiff's ability to investigate the facts and to present the claims, and the presence or absence of conflicting testimony."  *Recca v. Omaha Police Dep't*, 859 F. App'x 3, 4 (8th Cir. 2021) (citing *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996)).

The Court has carefully reviewed the record and finds there is no need for the appointment of counsel at this time as, at this early stage of litigation, Plaintiff appears able to adequately present her claims.  The Court is, however, aware that this situation may change as litigation progresses.  As the Eighth Circuit Court of Appeals instructs, the Court will "continue to be alert to the possibility that, because of procedural complexities or other reasons, later developments in the case may show either that counsel should be appointed, or that strict procedural requirements should, in fairness, be relaxed to some degree."  *Williams v. Carter*, 10 F.3d 563, 567 (8th Cir. 1993).

16

**B.  Motion for Status and Clarification**

On July 8, 2024, Plaintiff submitted correspondence addressed to the undersigned which the Court construes as a motion for status and clarification.  Filing No. 16.  Plaintiff generally inquires into the status of her case and asks a number of questions, including:

- Does she qualify for counsel and when will counsel be appointed?

- When does she have to appear in court?

- Does she "have to set a motion to start [her] case?"

- What is the statute of limitations for her case?

- "Is [her] case a class action or just personal[?]"

- "How long or categorize for punative [sic] damages/individual for [her] case[?]"

*Id.* at 1–2.

Upon consideration, Plaintiff's motion is granted to the extent that she seeks an update on the status of her case, and this Memorandum and Order serves to inform her of the status of her case.  Treating Plaintiff's various questions as a motion for clarification, the Court grants Plaintiff's motion consistent with this Memorandum and Order and the responses provided below.

First, Plaintiff's questions regarding the appointment of counsel were addressed in Section IV.A. above and need not be addressed further here.  Plaintiff also is advised that she does not yet have to appear in this Court or set a motion to start her case.  The Court has conducted its initial review of Plaintiff's Complaint and determined that it fails to state a claim upon which relief may be granted.  The Court will give Plaintiff leave to amend her Complaint as explained further below, and this case will not progress further unless and until Plaintiff files an amended complaint in accordance with this Memorandum and Order.

17

Next, Plaintiff asks what the statute of limitations is for her case. Because the Court construes Plaintiff's action as a 42 U.S.C. § 1983 case, Plaintiff is generally advised that the length of the statute of limitations for a § 1983 claim is the same as the length of the statute of limitations "for personal-injury torts" in "the State in which the cause of action arose." *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Nebraska, § 1983 actions are subject to a four-year statute of limitations. *See Montin v. Estate of Johnson*, 636 F.3d 409, 412-13 (8th Cir. 2011); Neb. Rev. Stat. § 25-207 ("The following actions can only be brought within four years: . . . (3) an action for an injury to the rights of the plaintiff, not arising on contract, and not hereinafter enumerated . . . ."). "Section 1983 claims accrue, for the purpose of the statute of limitations, when the plaintiff knows or has reason to know of the injury which is the basis of his action. Accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Haltom v. Parks*, No. 8:15-CV-428, 2018 WL 1033488, at *2 (D. Neb. Feb. 21, 2018) (citations omitted). The Court has not made, and will not make, any determination here regarding the timeliness of Plaintiff's claims.

In response to Plaintiff's question about whether her case is a class action, the answer is no as Plaintiff is the only named Plaintiff in this case and the only person who signed the Complaint. In any case, a pro se plaintiff who is not an attorney cannot maintain a class action. *See Evans v. Nebraska Beef, Ltd.*, No.8:12CV161, 2013 WL 4517258, at *7 (D. Neb. Aug.21, 2013) ("A litigant may bring his own claims to federal court without counsel, but not the claims of others." (internal quotation marks and quotation omitted)); *Coleman v. Newton*, No.8:08CV10, 2009 WL 1936265, at *1 (D. Neb. June 29, 2009) ("Pro se litigants may not represent other parties, even in class action

proceedings."). "Every court that has considered the issue has held that a prisoner proceeding pro se is inadequate to represent the interests of his fellow inmates in a class action." *Craig v.Cohn*, 80 F.Supp.2d 944, 946 (N.D. Ind. 2000) (internal quotation marks and quotation omitted). Thus, Plaintiff can pursue claims related to her confinement at the NCCW on her own behalf but may not assert the rights of other prisoners in a class action.

Finally, the Court does not understand Plaintiff's question regarding punitive and individual damages and, thus, provides no comment on the question here. While the Court has attempted to provide some clarification for Plaintiff, she is advised that the Court cannot provide legal advice nor act as Plaintiff's legal advisor. *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 243 (3d Cir. 2013) *(*citing *McKaskle v. Wiggins,* 465 U.S. 168, 183–84 (1984)) ("[T]here is no case law requiring courts to provide general legal advice to pro se parties. In a long line of cases, the Supreme Court has repeatedly concluded that courts are under no such obligation.").

## V. CONCLUSION

Plaintiff's Complaint fails to state a claim upon which relief may be granted against Defendant Folts-Oberle in her official capacity. On the Court's own motion, Plaintiff shall have 30 days from the date of this Memorandum and Order to file an amended complaint that sufficiently states her Eighth Amendment claims regarding the contaminated drinking water, mold exposure, and deliberate indifference to her medical needs against Folts-Oberle or other specific NCCW officials in their individual capacities. The amended complaint must identify each defendant by name or must provide as much identifying information for each defendant as possible if the defendant's name is unknown and must

19

set forth all of Plaintiff's claims (and any supporting factual allegations) against that defendant.   To be clear, Plaintiff's amended complaint must restate the relevant allegations of her Complaint, supplements, and any new allegations.   Plaintiff need not resubmit any exhibits previously filed with the Court but may incorporate any previously filed exhibits into her amended complaint by reference.   Plaintiff should be mindful to explain what each defendant did to her, when the defendant did it, and how the defendant's actions harmed her.   Plaintiff is warned that any amended complaint she files will supersede, not supplement, her prior pleadings.   Plaintiff is encouraged to use the court-approved form to draft her amended complaint, which the Clerk of the Court will provide to her.

If Plaintiff fails to file an amended complaint in accordance with this Memorandum and Order, this action will be dismissed without prejudice and without further notice.   The Court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. §§ 1915(e) and 1915A after she files an amended complaint which addresses the matters set forth in this Memorandum and Order.

IT IS THEREFORE ORDERED:

1.     Plaintiff shall have until **October 4, 2024,** to file an amended complaint in accordance with this Memorandum and Order.   Failure to file an amended complaint within the time specified by the Court will result in the Court dismissing this case without further notice to Plaintiff.   In her amended complaint, Plaintiff must identify each defendant by name or provide as much identifying information for each defendant as possible and set forth all of Plaintiff's claims (and any supporting factual allegations) against that defendant.   Plaintiff should be mindful to explain in her amended complaint what each

20

defendant did to her, when the defendant did it, and how the defendant's actions harmed her.

2.     In the event that Plaintiff files an amended complaint, Plaintiff shall restate the relevant allegations of the Complaint, Filing No. 1, supplements, Filing No. 8; Filing No. 10; Filing No. 12; Filing No. 13; Filing No. 14; Filing No. 15, and any new allegations. Failure to consolidate all claims into *one document* may result in the abandonment of claims.  Plaintiff is warned that an amended complaint will supersede, not supplement, her prior pleadings.  However, Plaintiff may incorporate any previously filed exhibits into her amended complaint by reference.

3.     The Court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. §§ 1915(e) and 1915A in the event she files an amended complaint.

4.     The Clerk of the Court is directed to send to Plaintiff the Form Pro Se 14 Complaint for Violation of Civil Rights (Prisoner).

5.     The Clerk of the Court is directed to update the spelling of Defendant's name to "Angela Folts-Oberle."

6.     The Clerk of the Court is further directed to set a pro se case management deadline using the following text: **October 4, 2024**: check for amended complaint.

7.     Plaintiff's Motion for Appointment of Counsel, Filing No. 9, is denied without prejudice to reassertion.

8.     Plaintiff's Motion for Status and Clarification, Filing No. 16, is granted consistent with this Memorandum and Order.

9.     Plaintiff shall keep the Court informed of her current address at all times while this case is pending.  Failure to do so may result in dismissal without further notice.

Dated this 4th day of September, 2024.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge